UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JERONE MCDOUGALD,　　　　　　　　　　Case No. 1:17-cv-72

　　　　Plaintiff,　　　　　　　　　　　　　　Dlott, J.
　　　　　　　　　　　　　　　　　　　　　　Bowman, M.J.
　　v.

LT. STONE, et al.,

　　　　Defendants.

**REPORT AND RECOMMENDATION**

**I. Background**

Plaintiff, a prisoner at the Southern Correctional Facility (SOCF) and frequent litigant in this Court,[1] filed this §1983 action alleging that he was subjected by various staff members at SOCF to an involuntary blood draw, in violation of his Fourth and Eighth Amendment rights. Plaintiff alleges that on January 4, 2017, three correctional officers (Defendants McCoy, King, and Stone) transported him from his cell and informed him that he was required to subject himself to a blood draw. Plaintiff told the officers that he did not want to give blood, but was informed by Defendant Stone that

---

[1] *See, e.g.,* Case Nos: 1:08-cv-744 (claim of excessive force during arrest); 1:16-cv-317 (First Amendment retaliation claims); 1:16-cv-497 (Eighth Amendment claims regarding use of pepper spray on multiple dates); 1:16-cv-633 (case transferred to Eastern Division, reopened as 2:16-cv-545); 1:16-cv-900 (claims regarding use of pepper spray and retaliation); 1:16-cv-1099 (claim regarding use of pepper spray and other force); 1:17-cv-72 (above-captioned case regarding involuntary blood draw); 1:17-cv-91 (R&R pending recommending dismissal of claim regarding high-calorie diet); 1:17-cv-95 (claim regarding use of pepper spray); 1:17-cv-124 (claim regarding use of pepper spray); 1:17-cv-127 (claim regarding "flood of biocontaminate" in cell); 1:17-cv-196 (retaliation claim); 1:17-cv-464 (involuntary blood draw), 2:16-cv-545 (claim regarding failure to provide kosher meals). In addition, Plaintiff previously has filed two petitions for habeas corpus: Case Nos. 1:11-cv-790; 1:16-cv-565. The undersigned recently noted in Case No. 1:16-cv-500 that Plaintiff appears to be equally litigious in state court.

1

the test was mandatory. Plaintiff alleges that he was placed in a medical cage and forced to involuntarily submit to a blood draw by a nurse, causing him "severe pain," before being returned to his cell. He alleges that in addition to the pain from the blood draw, he suffered a bruise on his arm from the placement of the needle, and his wrist felt "broke" after the procedure due to McCoy and Stone "excessively ben[ding] my arms and wrist" in an "awkward position," while restraining him so that the nurse could complete her task. He alleges "I am currently being denied an x-ray" of his wrist. (Doc. 3 at 2).

On April 10, 2017, the undersigned concluded on initial screening, and "without the benefit of briefing by the parties to this action…that plaintiff may proceed with his Eighth Amendment claims against defendants McCoy, King, and Stone, in their individual capacities." In addition, "[o]ut of an abundance of caution, the undersigned will…permit plaintiff's Fourth Amendment claim to proceed against defendants McCoy and Stone in their individual capacities." (Doc. 4 at 7). However, the undersigned recommended the dismissal of all other claims and defendants, including claims against McCoy, King, and Stone in their official capacities. Rejecting Plaintiff's objections, the presiding district judge adopted the R&R as the opinion of the Court. (Doc. 17).

In lieu of filing an Answer, all three Defendants have moved to dismiss Plaintiff's claims under Rule 12(b)(6), for failure to state a claim under either the Eighth or Fourth Amendments. For the reasons that follow, Defendants' motion should be granted.

## II. Analysis

### A. Standard of Review

Defendants' motion to dismiss has been filed under Rule 12(b)(6), prior to the commencement of any discovery. In considering the motion, the Court must "construe the complaint in the light most favorable to the nonmoving party, accept the well-pled factual allegations as true, and determine whether the moving party is entitled to judgment as a matter of law." *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.,* 508 F.3d 327, 336 (6th Cir.2007). Plaintiff has attached several informal complaint resolution forms (ICRs) as exhibits to his complaint. While the determination of whether Plaintiff's allegations state any claim rest primarily upon the allegations of the complaint itself, "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.,* 259 F.3d 493, 502 (6th Cir.2001) (quoting *Nieman v. NLO, Inc.,* 108 F.3d 1546, 1554 (6th Cir.1997)) (emphasis omitted).

Based upon liberal pleading standards under Rule 8 and the standard of review, it is far more common for cases to be disposed of on motions for summary judgment, following a period of discovery, than on Rule 12(b)(6) motions to dismiss. Nevertheless, where a defendant has filed a well-supported and meritorious motion to dismiss that clearly illustrates that the plaintiff has failed to state a claim, the motion will be granted. Having considered Defendants' well-supported motion in this case, together with Plaintiff's response and Defendants' reply, the undersigned concludes that the motion should be granted.

### B. Grounds Asserted in Defendants' Motion

#### 1. Eighth Amendment Excessive Force Claim

In order to make out a claim of excessive force that violates the Eighth Amendment, an inmate must allege conduct that would satisfy both an objective and a subjective component of such a claim. "The objective component requires the pain inflicted to be 'sufficiently serious,'" while "[t]he subjective component focuses on the state of mind of the prison officials." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Wilson v. Seiter*, 501 U.S. 294, 296 (1991) and *Hudson v. McMillian*, 503 U.S. 1, 6 (1992)). Defendants' motion argues that Plaintiff's allegations are insufficient to state a claim of excessive force under the Eighth Amendment, because grabbing Plaintiff's arm and drawing his blood by force was not objectively unreasonable, and none of the allegations suggest that it was done "maliciously and sadistically for the very purpose of causing harm." *Id.*, 631 F.3d at 383 (quoting *Hudson v. McMillian*, 503 U.S. at 6 (internal quotation marks omitted)).

Plaintiff alleges in his complaint that he was informed by the Defendants that he did not have the option of refusing the blood test, because it was "mandatory." Objectively, Plaintiff's allegations do not support a conclusion that the pain he experienced was "sufficiently serious" or that the amount of force was used more than necessary to secure his compliance with the blood draw, and to hold him in place while the nurse completed the task of drawing his blood. *See Boreland v. Superintendent Vaughn*, 1993 WL 62707 at *6 (E.D. Penn. March 3, 1993)(holding that forced blood draw of inmate who claimed that needle caused severe pain, dizziness, weakness throughout his body, painful swelling in his hand, and left a scar, did not constitute a

4

violation of the Eighth Amendment, because the "use of a needle to draw blood is hardly the cruel and unusual punishment contemplated by the Eighth Amendment"); *see also generally Goncalves v. Beshear*, 2010 WL 2178516 at *8 (W.D. Ky. May 26, 2010) (pretrial detainee failed to show injury or violation of Eighth Amendment in having blood drawn to test for sexually transmitted diseases); *Leavitt v. Wickham*, 2013 WL 1753009 at *2 (D. Nev. April 23, 2013)(holding that forced blood draw constitutionally permissible, reasoning that "blood draws are a routine fact of modern life and inmates 'have been lawfully subject to much more severe intrusions of their corporeal privacy than a sterile blood draw conducted by a trained medical professional,'" quoting *United States v. Kincade*, 379 F.3d 813, 837 (9th Cir. 2004) and citing *Hamliton v. Brown*, 630 F.3d 889, 896-897 (9th Cir. 2011)).

Defendants also persuasively argue that Plaintiff's allegations fail to demonstrate any subjective intent to cause him harm, since he only alleges that Defendants Stone and McCoy bent his arms and wrists "awkwardly" while a nurse forced an intravenous needle into his arm. *See e.g., Hamilton v. Brown*, 630 F.3d 889, 897 (9th Cir. 2011)(holding that claim that use of physical force to extract blood sample violates the Eighth Amendment fails as a matter of law where plaintiff failed to allege more than that he was handcuffed and restrained to effect the blood test, and did not allege pain beyond what would be expected from the needle stick); *Sanders v. Coman*, 864 F. Supp. 496, 499-501 (E.D.N.C. 1994)(no Eighth Amendment violation where prison officials used reasonable force to collect DNA samples from unwilling prisoners); *Nawrocki v. Linder*, 2008 WL 4533681 at *2-4 (W.D. Wis. March 7, 2008) (dismissing on initial screening Eighth Amendment claim based upon painful blood draw that allegedly

5

caused seizure, because the fact that defendant told plaintiff she knew that it hurt to have a needle placed in his arm is not evidence that she intended to cause him to experience pain unnecessarily, and plaintiff could not show that defendant intended him to suffer serious injury from the blood draw, that she knew that serious injury was highly likely from the blood draw).

In addition, Defendants point out that the ICRs attached to Plaintiff's complaint fail to mention that any injury resulted from the incident beyond the pain of the blood draw. Although Plaintiff alleges in his complaint that his wrist felt "broke" following the blood draw, none of the ICRs reference any damage or injury to his wrist or the alleged refusal of any named Defendant to provide him with an x-ray of his wrist to ensure that it was not broken.

In his response in opposition to the motion to dismiss, Plaintiff argues that he is not required to show any serious injury in order to make out an Eighth Amendment claim. He further maintains that the incident caused pain to his wrist, and that he still has not received an x-ray, apparently seeking to make out a claim of deliberate indifference to a serious medical need. However, the undersigned finds dismissal to be appropriate in part because Plaintiff does not allege or argue that he notified any of the named *Defendants* of the alleged pain in his wrist, or that it was any of those individuals (as opposed to some unnamed prison official) who allegedly denied him medical treatment. "To state a claim against a defendant in his individual capacity, plaintiff must allege personal involvement of the defendant in causing plaintiff's injury." *Dotson v. Wilkinson*, 477 F. Supp. 838, 847 (citing Hardin v. Straub, 954 F.2d 1193, 1196 (6th Cir. 1992)).

## 2. Eighth Amendment Failure to Protect Claim

Because I have concluded that Plaintiff's allegations fail to satisfy either the objective or subjective components required to state a claim of excessive force against Defendants McCoy and Stone based on the blood draw, it follows that his allegations fail to make out an Eighth Amendment claim of "failure to protect" against Defendant King based upon her failure to prevent the forcible blood draw. A failure to protect claim also requires a plaintiff to show both objective and subjective components. It is not possible to conclude from the allegations in the complaint that there was an objectively reasonable risk or harm from the blood draw, or that King knew that a substantial risk of harm would exist from subjecting Plaintiff to what Stone represented to be a "mandatory" and routine blood test. Therefore, King is entitled to dismissal of this claim.

In his response in opposition to Defendants' motion to dismiss, Plaintiff argues that King did have the requisite knowledge of "a substantial risk of harm" from the forced blood draw, based on Plaintiff's cursory assertion that "[t]he blood draw was not mandatory as stated…but this was told to plaintiff as a means of using excessive force and to humiliate Plaintiff." He argues that the blood draw actually was in violation of Ohio Revised Code § 5120.163 which provides:

> At the time of reception *and at other times the director determines to be appropriate*, the department of rehabilitation and correction may examine and test a prisoner for tuberculosis, HIV infection, hepatitis, including but not limited to hepatitis A, B, and C, and other contagious diseases. The department may test and treat involuntarily a prisoner in a state correctional institution who refuses to be tested or treated for tuberculosis, HIV infection, hepatitis, including but not limited to hepatitis A, B, and C, or another contagious disease.

*Id.*(emphasis added). In his response in opposition to Defendants' motion to dismiss, Plaintiff maintains that the blood draw "was not order[ed] by the director nor a court of

7

law [through] a search warrant," and therefore was in fact, contrary to law. Plaintiff also complains that he had already submitted to a blood test earlier in his incarceration "prior to being forced," such that there was no need to repeat the test. (Doc. 14 at 4).

As Defendants point out, the referenced statute provides for mandatory blood testing for contagious diseases at virtually any time that "the director determines to be appropriate." One of the ICRs attached to Plaintiff's complaint reflects his complaint that, in the week prior to the blood draw, he was falsely accused of throwing or expelling or causing a bodily substance to come into contact with another, and was falsely accused of spitting in a correctional officer's face. The ICR, dated 12/28/16, further states that he was not only sent to segregation for 15 days for the offense but was also ordered to pay for blood testing, which he was refusing to submit to on the basis that such testing was not ordered in compliance with Ohio law. (Doc. 3 at 6). Thus, regardless of whether Plaintiff believes that the blood draw did or did not violate state law, his complaint and accompanying exhibits clearly reflect that he was advised that the blood test was mandatory and directed by the institution, with a strong inference that the intent was to test for any infectious or contagious disease that might have resulted from the disciplinary offense of which Plaintiff had been convicted.

### 3. Fourth Amendment Claim

The Fourth Amendment to the United States Constitution protects individuals "against unreasonable searches and seizures." U.S. Const. Amend. IV. Forcing an individual to subject himself to a blood draw may implicate Fourth Amendment concerns, but the evaluation of what is "reasonable" within the boundaries of the Fourth Amendment takes context into consideration, including whether the individual has been

8

placed under arrest or is incarcerated. *See Schmerber v. State of California*, 384 U.S. 757 (1966)(holding that forced taking of blood of petitioner arrested for driving under the influence did not violate the Fourth Amendment). "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 2261 (1987)(evaluating constitutionality of prison mail and marriage regulations). Thus, normally invasive practices, like requiring inmates to expose their body cavities for visual inspection, are often permissible when inside the prison walls. *Bell v. Wolfish*, 441 U.S. 520, 537, 99 S. Ct. 1861, 1873 (1979) (finding searches reasonable under the Fourth Amendment).

This Court is limited to consideration of Plaintiff's complaint, and no discovery has yet taken place. At the same time, a strong inference arises from the face of the complaint and accompanying exhibits that Plaintiff was informed that he was required to undergo "mandatory" blood testing as a result of a disciplinary offense in which he was accused of spitting on a correctional officer. The Sixth Circuit has previously upheld mandatory blood testing in other contexts, relying on an inmate's "sharply reduced expectation of privacy, and the minimal intrusion required in taking a blood sample for DNA analysis" for identification purposes. *See United States v. Conley*, 453 F.3d 674, 680 (6th Cir. 2006) (confirming constitutionality of blood draws under the Federal DNA Act, 42 U.S.C. § 14135a); *see also Wilson v. Wilkinson*, 608 F. Supp.2d 891, 895 (S.D. Ohio 2007) (Ohio's DNA Act does not violate Fourth Amendment). Additionally, courts have upheld that mandatory blood draws in prisons may be conducted in furtherance of drug testing and to control the spread of communicable diseases. *See Dunn v. White*,

9

880 F.2d 1188, 1195 (10th Cir. 1989) (holding that prison's substantial interest ascertaining the extent of contagion constitutes a legitimate penological purpose that outweighed reduced privacy interest of prisoner, and justified coercive blood testing for AIDS).

Plaintiff's original complaint does not allege that the prison lacked any legitimate penological interest in obtaining the blood sample and, as noted, an ICR attached to his complaint strongly suggests the existence of a valid penological purpose. However, in his response in opposition to the motion to dismiss, Plaintiff argues for the first time that "[t]here was no justifiable legitimate penological interest in obtaining my blood sample." (Doc. 14 at 2). He argues that the blood draw in January 2016 was not authorized under Ohio law, because it was not pursuant to an order of the Director of the Ohio Department of Rehabilitation and Corrections, nor was the blood draw pursuant to a warrant or court order. He asserts that he previously permitted a blood draw, such that there existed no grounds for repeating the test. He asserts that his blood was tested and his DNA was entered into a database some 19 years ago. (Doc. 14 at 5). Plaintiff's cursory argument cannot overcome the dismissal of his claims on the facts presented, and as alleged in his original complaint.

### 4. Qualified Immunity

In addition to maintaining that Plaintiff has failed to allege facts that would support the subjective or objective components of an Eighth Amendment claim, or make out a violation of his Fourth Amendment rights, the Defendants argue that they are entitled to qualified immunity on Plaintiff's claims. Even though dismissals on the basis of qualified immunity are more frequently made on summary judgment, *see Grose v.*

*Caruso*, 284 Fed. Appx. 279, 183 (6th Cir. 2008)(internal citations omitted), a dismissal may be granted under Rule 12(b)(6) where, as here, the Plaintiff's allegations fail to show that any Defendant violated any clearly established constitutional right of which a reasonable official should have known.

No clearly established law prohibits prison officials from subjecting an inmate to a mandatory blood draw by a nurse or phlebotomist, as is alleged to have occurred herein. Even if Plaintiff could prove (as he asserts for the first time in his opposition to Defendants' motion) that the blood draw somehow violated Ohio law, the Defendants still would be entitled to qualified immunity. There is no controlling Supreme Court precedent and a paucity of Sixth Circuit case law on the precise issues presented by this case, but all published and unpublished case law, as cited herein, demonstrates the overwhelming consensus of courts that subjecting an incarcerated felon to an involuntary blood draw simply does not run afoul of the Eighth or Fourth Amendments, even when the inmate alleges that the blood test is not specifically authorized. *See generally Sumpter v. Wayne County*, ___ F.3d ___, Case No. 16-2102 (6th Cir. August 18, 2017) (holding that defendant was entitled to qualified immunity because pretrial detainee had no clearly established right to be free from extremely invasive and especially humiliating periodic group strip searches). No contrary controlling law exists that would have put the Defendants on notice that forcing Plaintiff to undergo the blood test violated any established constitutional right. Therefore, Defendants are entitled to qualified immunity. *Accord Dobson v. Wilkinson*, 477 F. Supp.2d at 850 (granting Rule 12(b)(6) motion to dismiss on qualified immunity grounds to defendants sued in their

individual capacities, where inmate had not demonstrated any constitutional violation under the Eighth Amendment).

### 5. Eleventh Amendment Immunity

Defendants argue that any claims against them in their official capacities are barred by the Eleventh Amendment. The undersigned does not disagree, but notes that the Court's prior R&R and Order adopting that R&R already dismissed all claims brought against the Defendants in their official capacities, and permitted only claims against the three identified Defendants in their individual capacities.

### 6. Plaintiff's motion for leave to amend his complaint to add phlebotomist Ms. Diles and Nurse James

On July 10, 2017, Plaintiff moved to amend his complaint to add two additional Defendants, namely, the phlebotomist and the nurse who participated in the blood draw. For the reasons stated, Plaintiff cannot state any claim against the newly identified Defendants, such that his motion to amend should be denied as futile. Additionally, Plaintiff includes no allegations whatsoever against the nurse or phlebotomist that would remotely suggest that their actions in conducting the routine medical procedure objectively subjected him to a risk of serious harm sufficient to make out an Eighth Amendment violation, or that they subjectively intended to cause him harm by executing the blood draw. Nor does the motion to amend the complaint contain any allegations that would be sufficient to hold the phlebotomist or nurse personally liable under the Fourth Amendment.

### III. Conclusion and Recommendation

For the reasons stated, **IT IS RECOMMENDED THAT** the motion of Defendants McCoy, Stone, and King to dismiss all claims against them for failure to state a claim

(Doc. 10) be **GRANTED**, that Plaintiff's motion to amend his complaint to add new defendants (Doc. 16) be **DENIED**, and that this case be dismissed.[2]

                                                                           */s Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

---

[2] The undersigned takes judicial notice of the fact that in Case No. 1:16-cv-317, the record reflects that mail was recently returned to this Court in that case with a notation that "inmate is on constant suicide watch unable to receive mail." (Doc. 69, filed 8/16/17). On August 17, 2017, Plaintiff filed a motion to stay proceedings in the same case, for essentially the same reason, stating that he is being held in mental health segregation where he does not have access to his legal papers. (Doc. 70).

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JERONE MCDOUGALD,                                   Case No. 1:17-cv-72

    Plaintiff,                                   Dlott, J.
                                                    Bowman, M.J.
  v.

LT. STONE, et al.,

    Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).